UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LARRY BERNARD MERRITT,

      Plaintiff,

v.                                                  Case No.  2:24-cv-397-KCD-NPM

STEPHEN MATHEWSON,
MATTHEW MORALES-
ROMAN, ALBERT SCARPATI,
E. DELNE, M. BURTON, L.
PARASCRUK, G. NOE,
MEDICAL PROVIDERS
CENTURION CORPS, and
FLORIDA CONTRACTOR,

      Defendants.

_____/

## ORDER

Plaintiff Larry Bernard Merritt, a prisoner of the Florida Department of
Corrections, initiated this action by filing a *pro se* civil rights complaint under
42 U.S.C. § 1983. (Doc. 1.) He generally alleges that he was involved in a
physical altercation with two officers at Charlotte Correctional Institution and
received constitutionally inadequate medical care for the resulting injuries.
(*Id.*) Defendants Nurse Ernick Delne, Nurse Michelle Burton, Nurse Inna
Paraschuk, Dr. Gilbert Noe, and Centurion of Florida, LLC (collectively,
"medical defendants") now move to dismiss Plaintiff's complaint. (Doc. 67.) For
the reasons below, the motion to dismiss is **GRANTED**.

## I. Pleadings

### A.    Complaint

The complaint alleges the following relevant facts: [1] Plaintiff was engaged in a physical altercation with Defendants Officer Mathewson and Officer Morales as he was being escorted to his cell on October 14, 2021. (Doc. 1 at 10, ¶ 1.) After the altercation, Plaintiff was taken to the nurses' station. Nurse Delne examined Plaintiff but reported no visible injuries. (Doc. 1 at 20, ¶ 19.) He was then escorted to his cell, where he was examined by Nurse Burton, who told Plaintiff "[t]hey should have sent you to the hospital or killed you." (*Id.* ¶ 20.) She told the officers that they could give him ibuprofen. (*Id.*)

Later that day, Plaintiff fainted and was examined by Nurse Parascnuk, who revived him with ammonia. (*Id.* ¶ 21.) She told him that he had no serious injuries and an old cut would stop bleeding soon. (*Id.*) She performed a visual assessment and released him to security staff. (*Id.*)

The following day, Doctor Noe came to Plaintiff's cell with security staff and determined that he was fit to travel. (*Id.* ¶ 20.) Plaintiff was immediately transferred to Florida State Prison and placed on maximum security for

---

[1]This is a subset of Plaintiff's alleged facts because the instant motion concerns only the medical defendants. Nevertheless, the Court includes some allegations supporting Plaintiff's claims against other defendants to provide context.

aggravated battery on a corrections officer. (*Id.* at 21, ¶ 23.) He was found guilty but did not receive an outside charge. (*Id.* ¶ 29.)

Plaintiff asserts that he received inadequate treatment for his wounds because of Defendant Centurion's policy of restricting treatment of prisoners who have altercations with corrections officers. (Doc. 1 at 13.) Plaintiff allegedly suffers from reoccurring headaches, especially in the area where he was hit. (Doc. 1 at 22, ¶¶ 34-35.) He seeks monetary damages and injunctive relief.

### B.    Motion to Dismiss

The medical defendants allege that Plaintiff has not stated a medical deliberate indifference claim. (Doc. 67). They note that Plaintiff's medical records—which are attached to his complaint—show that each individual defendant examined his wounds as best he or she was able but ultimately concluded that Plaintiff had suffered only minor injuries. (*Id.* at 7.) They also argue that Plaintiff's allegation that Centurion had a policy of not providing care to prisoners who fought with prison officials is belied by the numerous medical records attached to the complaint showing the Department of Corrections medical treatment of the injuries that resulted from Plaintiff's altercation. (*Id.* at 9.)

Plaintiff responded to the motion to dismiss, but his response primarily repeats his original allegations and includes additional facts to support his

claims. Since a Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint, any new factual allegations offered for the first time in Plaintiff's opposition will not be considered. *See Erb v. Advantage Sales & Mktg. LLC*, No. 6:11-CV-2629-SLB, 2012 WL 3260446, at *3 (N.D. Ala. Aug. 3, 2012) ("Motions to dismiss brought pursuant to Rule 12(b)(6) test the sufficiency of the factual allegations contained in the complaint, and a party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion.").

## II. Legal Standard

In evaluating a motion to dismiss, this Court accepts as true all allegations in the complaint and construes them in the light most favorable to the plaintiff. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations. *Stephens v. Dep't of Health & Hum. Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, factual allegations must be more than speculative:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations

must be enough to raise a right to relief above the speculative level.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[2] Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Supreme Court has established a two-pronged approach to evaluate motions to dismiss. First, a reviewing court determines whether a plaintiff's allegation is merely an unsupported legal conclusion that is not entitled to an assumption of truth. Next, it determines whether the complaint's factual allegations state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Evaluating a complaint under Rule 12(b)(6) is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## II. Discussion

Liberally construing Plaintiff's complaint, he alleges that the individual medical providers—Defendants Delne, Burton, Parachuk, and Noe—are liable for not discovering and treating his wounds on the day they occurred. Stated differently, Plaintiff argues that the cursory nature of the medical exams he

---

[2] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and subsequent citations.

received on the day of the altercation were so inadequate that the defendants were deliberately indifferent to his serious medical needs.[3]

The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits government officials from exhibiting "deliberate indifference" to the serious medical needs of prisoners. *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024); *Estelle*, 429 U.S. at 104–05. The Eleventh Circuit recently clarified the standard for establishing liability on an Eighth Amendment deliberate-indifference claim. *Wade*, 106 F.4th at 1261-62. The plaintiff must first show that "he suffered a deprivation that was, objectively, sufficiently serious." *Id.* at 1262.[4] Next, the plaintiff must demonstrate that the defendant acted with "subjective recklessness as used in the criminal law." *Id.* This means that the plaintiff must establish "that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Id.*

Not every allegation of inadequate medical treatment states a cognizable claim under the Constitution. *Wade*, 106 F.4th at 1262. "Medical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent,

---

[3] The Court notes that Plaintiff was in the care of the individual medical defendants for only a few hours before his transfer to a different prison where he was treated by medical professionals who are not named in this action.

[4] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and subsequent citations.

inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). And "[w]here a prisoner has received . . . medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985). In short, a prisoner cannot establish a constitutional violation simply because he "may have desired different modes of treatment" than was provided. *Id.* Such course of treatment claims, by definition, involve the "exercise of professional judgment" and are not actionable. *Estelle*, 429 U.S. at 104 n.10.

Here, Plaintiff attached 35 pages of medical records to the complaint. (Doc. 1-1.) The Court may consider exhibits attached to a complaint when reviewing a motion to dismiss. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). The records show that Nurse Delne wrote on Plaintiff's chart that she performed a "cell side" assessment immediately after the October altercation—at about 2:15 p.m.—and saw "no visible injuries." (Doc. 1-1 at 2, 4.) Three hours later, Nurse Burton examined Plaintiff, noting that she was "unable to fully assess [Plaintiff's] head laceration" because it was only "a cell side assessment. Laceration is not actively bleeding." (*Id.* at 8-13). She was unable to do a more fulsome assessment or clean his wound because Plaintiff

7

was disorderly. (*Id.* at 8-9.) She instructed Plaintiff to watch for signs of infection and to return to medical "if symptoms get worse or any new symptoms develop," and prescribed acetaminophen or ibuprofen for pain. (*Id* at 9, 11.) She also wrote that Plaintiff told her that he thought his ribs might be broken. (*Id.* at 10.) She wrote that "inmate will be seen by provider in a.m." (*Id.* at 12.)

At around 6:15 p.m., Nurse Paraschuk responded to Plaintiff's dormitory because he was reported as unresponsive. (Doc. 1-1 at 7.) He was brought to her in a restraint chair. (*Id.*) She revived him with ammonia. (*Id.*) She wrote that Plaintiff "voiced" his concerns about his prior injury, showed "no distress, respiration easy, speech clear, voice loud, carefully inspected ears. No bleeding, no fluids leaking from nose, mouth intact, old abrasion on [right] back of head, dry blood noted [right] ear lobe, discoloration [indecipherable] mild swelling." (*Id.*) She wrote that she "clearly explained to [patient] no acute findings. May return as needed if worsens or unresolved." (*Id.*) Dr. Noe stamped and initialed Defendant Paraschuk's report. (*Id.*)

Although the extent of Dr. Noe's physical exam of Plaintiff is unclear due his handwriting, he wrote that he examined Plaintiff cell side at 8:59 the following morning. (Doc. 1-1 at 3.) He noted that Plaintiff had a laceration on the right side of his head and complained of rib and back pain. (*Id.*) Dr. Noe recommended x-rays (which Plaintiff did ultimately receive), although it is unclear as to the number or nature of the x-rays ordered. (*Id.*)

Plaintiff was transferred from Charlotte Correctional Institution to Florida State Prison on October 15, 2021, the same day he was examined by Dr. Noe. There, he was examined by Nurse Harold (who is not a defendant). Nurse Harrold noted that Plaintiff had swelling and bruising on his head, a swollen left hand, pain when opening or closing his mouth, and swelling and pain in his back and ribs. (Doc. 1-1 at 19). Plaintiff received x-rays on his face, hand, and ribs, but no fractures or injuries were found. (*Id.* at 20–21.)[5]

Even if the Court finds that the injuries Plaintiff received as a result of his tangle with corrections officers presented an objectively serious medical need, the vague and conclusory allegations in his complaint do not articulate how any individual medical defendant was deliberately indifferent to that need. The individual defendants examined Plaintiff as best they were able, recorded his wounds, prescribed pain relief, ordered x-rays, told him to seek medical help if his injuries worsened, and noted that he would receive a more thorough exam the following day (which he did, albeit at a different prison). Presumably, Plaintiff argues that the individual defendants lied about the extent of his injuries because they did not record them on his chart identically to the nurse who examined him at Florida State Prison. But it is axiomatic

---

[5] Plaintiff complains that he has still not received adequate treatment for his injuries. However, the individual medical defendants named here treated him only on the day of and the morning following his altercation with prison officials.

that the level of soreness, swelling, and bruising caused by an injury can change in the first 24 hours after the injury occurs. Moreover, the depth of the defendants' examinations was limited due to the necessity of performing only a cell side evaluation for their own safety. In short, Plaintiff's injuries were not ignored. He received at least cursory medical treatment for his injuries. While he wanted the nurses and Dr. Noe to do more—without explaining what they could have done at the time—disagreement with the course of treatment is a matter for medical judgment that does not give rise to an actionable claim of deliberate indifference. *Estelle*, 429 U.S. at 106-07.

As to Plaintiff's claims against Centurion, a corporation may be held liable for a violation of an inmate's constitutional rights only under the standard laid out in *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978).[6] The central question under *Monell* is whether "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Plaintiff's conclusory statement that Centurion has a policy against correctly treating inmates who are involved in physical altercations with corrections

---

[6] Although *Monell* dealt with municipal corporations, private corporations providing essential government services are subject to the same rules that apply to public entities. *See Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992) (recognizing that "every circuit court to consider the issue has extended [*Monell*] to private corporations as well.").

officers is belied by the multiple pages of medical records showing that he was seen by prison medical providers many times after this purported incident. (Doc. 101 at 1–35.) And any allegation that Centurion expends considerable resources for the very purpose of deliberately misdiagnosing and mistreating prisoners is too far-fetched to state a plausible claim. In short, Plaintiff has not alleged sufficient facts to raise his claims against Centurion above the speculative level.

## II.    Conclusion

Plaintiff's claims against the medical defendants are dismissed for failing to state a claim on which relief may be granted. Because the medical records attached to Plaintiff's complaint clearly establish that the named medical defendants were not deliberately indifferent to his serious medical need and that a Centurion policy did not cause Plaintiff's injuries, amendment of the complaint to restate claims against the medical defendants would be futile. Thus, the dismissal of the claims against these defendants is without leave to amend. *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020) (recognizing that leave to amend is futile "if an amended complaint would still fail at the motion-to-dismiss or summary-judgment stage").

Accordingly, it is **ORDERED**:

11

1. This motion to dismiss filed by Defendants Delne, Burton, Paraschuk, Noe, and Centurion LLC is **GRANTED.** All claims against these defendants are dismissed with prejudice for failure to state a claim on which relief may be granted.

2. The medical defendants' supplemental motion to dismiss Plaintiff's claims for failure to exhaust (Doc. 79) is **DENIED as moot**.

3. The Clerk is **DIRECTED** to terminate Delne, Burton, Paraschuk, Noe, Centurion LLC, and "Florida Contractor" as defendants in this action.

**ENTERED** in Fort Myers, Florida on March 16, 2026.

Kyle C. Dudek
United States District Judge

12