UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LARRY BERNARD MERRITT,

      Plaintiff,

v.

STEPHEN MATHEWSON,
MATTHEW MORALES-
ROMAN, ALBERT SCARPATI,
E. DELNE, M. BURTON, L.
PARASCRUK, G. NOE,
MEDICAL PROVIDERS
CENTURION CORPS, and
FLORIDA CONTRACTOR,

      Defendants.

_____/

Case No.  2:24-cv-397-KCD-NPM

## **ORDER**

Plaintiff Larry Bernard Merritt, a prisoner of the Florida Department of Corrections, initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983. (Doc. 1.) He generally alleges that two officers at Charlotte Correctional Institution physically assaulted him in retaliation for his grievances and complaints. (*Id.*) Defendants Major Scarpati, Officer Mathewson, and Officer Morales-Roman (collectively, "the Officers") now move to dismiss Plaintiff's complaint. (Doc. 57.)

The Court will hold disposition of the claims against Scarpati and the Officers' argument that Plaintiff's claims are unexhausted until he files a

response to the supplemental motion. (Doc. 81.) As for the rest of the merits, the Officers' motion to dismiss is granted in part and denied in part.

## I.      Pleadings and Procedural History

### A.      Complaint

Plaintiff alleges the following relevant facts:[1] On October 14, 2021, Officers Mathewson and Morales-Roman escorted Plaintiff to his cell. (Doc. 1 at 10, ¶ 1.) Morales-Roman allegedly told Plaintiff that he did not like sex offenders. (*Id.* at 10, 18 ¶¶ 2–5.) Mathewson also expressed his personal dislike of Plaintiff, and while Plaintiff responded that he did not want "any problems," Mathewson continued to "threaten" and "provoke" him. (*Id.* at 18, ¶¶ 5–7.) At Plaintiff's cell door, Moralas-Roman told Plaintiff, "Since you like to write grievances and filed complaints to the court, you're going to get something to write about, Rapist." (*Id.* ¶ 8.) As Mathewson removed Plaintiff's cuffs, he put pressure on Plaintiff's fingers, which caused severe pain. (*Id.* at 18–19, ¶ 9.) Mathewson allegedly told Plaintiff that he was going to break his hand. Plaintiff tried, but was unable, to pull his hand away. (*Id.* at 19, ¶ 9.) So Plaintiff punched Mathewson on the side of the face. (*Id.* ¶ 10.)

---

[1] This is a subset of the underlying facts because the instant motion concerns only the Officers. Nevertheless, the Court includes some allegations supporting Plaintiff's claims against other defendants to provide context. When quoting Plaintiff, the Court will correct minor spelling and grammar errors.

Mathewson responded by grabbing Plaintiff and pulling him close. (Doc. 1 at 19, ¶ 11.) Plaintiff grabbed Mathewson around the waist, and they fell to the floor with Plaintiff on top. (*Id.* ¶ 12.) Mathewson grabbed Plaintiff as he tried to get up. (*Id.* ¶ 13.) Morales-Roman, meanwhile, began to punch Plaintiff in the neck and side of the face, preventing him from rising. (*Id.*) Morales-Roman struck Plaintiff on the back of the head until a gash opened, and Plaintiff lost consciousness. (*Id.* ¶ 14.) Morales-Roman did not stop hitting Plaintiff until other inmates said that he was "going to kill him." (*Id.* ¶¶ 14, 15.) Morales-Roman helped Mathewson stand up. (*Id.* ¶ 16.) Mathewson re-cuffed Plaintiff's hands and told him that "[t]his is for Cotte and Sharres and as long as you're here at Charlotte C.I. you'll keeping getting your ass kicked and if you leave and ever come back, it will start all over again." (*Id.* at 19–20, ¶ 17.) Defendant Mathewson then kicked Plaintiff in the side of his face near his right eye. (*Id.* at 20, ¶ 18.)

Plaintiff was transferred from Charlotte Correctional Institution to Florida State Prison on October 15, 2021, the day after the use-of-force incident. There, he was examined by Nurse Harold (who is not a defendant). Nurse Harrold noted that Plaintiff had swelling and bruising on his head, a swollen left hand, pain when opening or closing his mouth, and swelling and pain in his back and ribs. (Doc. 1-1 at 19). Plaintiff suffers from recurring headaches, especially in the area where he was hit. (Doc. 1 at 22, ¶¶ 34–35.)

Plaintiff alleges that Mathewson and Morales-Roman violated the Eighth Amendment by using excessive force against him without a legitimate penological reason. (Doc. 1 at 22.) He claims that they violated the First Amendment by retaliating against him for filing complaints to the court and for being a sex offender. (*Id.*)

### B.    Motion to Dismiss

Mathewson and Morales-Roman move to dismiss Plaintiff's complaint on eight separate grounds. (Doc. 57 at 1.)

Plaintiff responded to the motion (Doc. 68), but his response primarily repeats his original allegations and includes additional facts to support his claims. Since a Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint, any new factual allegations offered for the first time in Plaintiff's opposition will not be considered. *See Erb v. Advantage Sales & Mktg. LLC*, No. 6:11-CV-2629-SLB, 2012 WL 3260446, at *3 (N.D. Ala. Aug. 3, 2012) ("Motions to dismiss brought pursuant to Rule 12(b)(6) test the sufficiency of the factual allegations contained in the complaint, and a party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion.").

## C.    Supplemental Pleadings

Upon initial review of the Officers' motion to dismiss, the Court issued an order for supplemental briefing on the issue of exhaustion. The Court explained:

> The Officers press eight arguments against Plaintiff's claims, including that he did not exhaust his administrative remedies under 42 U.S.C. § 1917e(a) before filing his complaint. And while the Officers parrot the standards for exhaustion and attach 41 pages of exhibits—many entirely unrelated to the claims in Plaintiff's complaint—they do not explain how the attached exhibits negate exhaustion. To the extent the Officers ask the Court to comb the record to find evidence and craft arguments they did not make, the request is denied. Nevertheless, it appears that Plaintiff may not have exhausted some of his claims, and it would be a waste of time and resources to litigate issues that are barred under section 1917e(a). Thus, the Officers must file a supplement to their motion to dismiss that discusses each of Plaintiff's related grievances and explains whether that specific grievance exhausted any of the claims raised against each of them.[FN]
>
> > [FN] In other words, Defendants should discuss each claim against each Officer.
>
> Conclusory assertions of non-exhaustion pointing to attachments will not suffice. To the extent the Officers argue that Plaintiff did not exhaust certain claims against them, they must also discuss whether administrative remedies were available to Plaintiff. *See Ross v. Blake*, 578 U.S. 632, 642 (2016)

(Doc. 75 at 2–3 (citations to the record omitted).)

On January 12, 2026, the Officers filed a supplemental motion to dismiss

focusing on exhaustion. (Doc. 81.) Plaintiff sought more time to respond (despite having had eight months to do so) because he had only limited access to a law library at the medical facility at which he was being held. (*Id.* at 1-2.) Plaintiff has since been transferred to Wakulla Correctional Institution. (Doc. 83). Thus, the Court directs Plaintiff to file a full response to the Officers' supplemental motion to dismiss within thirty days.

In the meantime, the Court will address the Officers' arguments concerning Plaintiff's retaliation and excessive force claims and defer ruling on the exhaustion claims until after Plaintiff responds to the supplemental motion or the time to respond has passed.[2]

## II.    Legal Standards

In evaluating a motion to dismiss, this Court accepts as true all allegations in the complaint and construes them in the light most favorable to the plaintiff. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004); *see also Stephens v. Dep't of Health & Hum. Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").

---

[2] As mentioned, the Court will defer ruling on claims against Defendant Scarpati. This is because it does not appear that Plaintiff exhausted a failure to protect (or any other) claim against him. To the extent Plaintiff shows that he exhausted a claim against Defendant Scarpati, the Court will address it when ruling on the Officers' supplemental motion to dismiss.

However, the Supreme Court has explained that factual allegations must be more than speculative:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[3] Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Supreme Court has established a two-pronged approach to evaluate motions to dismiss. First, a reviewing court determines whether a plaintiff's allegation is merely an unsupported legal conclusion that is not entitled to an assumption of truth. Next, it determines whether the complaint's factual allegations state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Evaluating a complaint under Rule 12(b)(6) is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

---

[3] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and subsequent citations.

7

### III.   Discussion

As noted, this Order address only the First Amendment retaliation and Eighth Amendment excessive force claims against Officers Mathewson and Morales-Roman based on the October 14, 2021, use of force.

### A.   Retaliation Claims

Under the First Amendment, a prison official may not retaliate against a prisoner for exercising his right to free speech. *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). And "[a] prisoner can establish retaliation by demonstrating that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." *Id.* "To prevail on a retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action . . . and the protected speech." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011).

While mindful that a plaintiff may not be held to a heightened burden of proof on a retaliation claim, *see Crawford-El v. Britton*, 523 U.S. 574, 580–86 (1998), courts approach prisoner claims of retaliation "with skepticism and particular care" due to the near inevitability that prisoners will take exception with the decisions of prison officials and the ease with which claims of

retaliation may be fabricated. *See Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001).

Plaintiff alleges that Defendants Mathewson and Morales-Roman used retaliatory force against him because he filed grievances.[4] Specifically, he alleges that, just before Mathewson removed his handcuffs, Morales-Roman told him: "since you like to write grievances and file complaints to the court, you're going to get something to write about, Rapist." He also claims that while re-cuffing him after the use-of-force incident, Defendant Mathewson told Plaintiff that it was for "Cotte and Sharres" and then kicked him in the face. It is well-settled law that the First Amendment protects inmates from retaliation by prison officials for filing administrative grievances and lawsuits. *Green v. Mowery*, 212 F. App'x 918, 919 (11th Cir. 2006); *Redd v. Conway*, 160 F. App'x 858, 862 (11th Cir. 2005). Thus, Plaintiff has satisfied his burden of proof on the first element of a retaliation claim.

But the second two factors of a retaliation claim—whether Plaintiff actually suffered an adverse action *as a result of his grievances and lawsuits* and whether there is a causal connection between the adverse actions and the

---

[4] Plaintiff also asserts throughout his complaint that the use-of-force was predicated—at least in part—on Mathewson's and Morales-Roman's dislike of sex offenders. Even if true, this does not allege a retaliation claim because conduct amounting to a sex offense is not protected under the First Amendment. Thus, Plaintiff's relief for excessive force motivated by the Officers' animus towards sex offenders lies solely in the Eighth Amendment.

grievances and lawsuits—are problematic for Plaintiff. This is so because, to prevail on a retaliation claim, "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a 'but for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019).

Plaintiff alleges that Defendant Morales-Roman told him that he was "going to get something to write [a grievance] about" immediately before Mathewson bent his fingers and threatened to break his hand. He also alleges that Mathewson referenced other officers who were sued by Plaintiff before he (Mathewson) kicked Plaintiff's face after he was subdued. This sufficiently alleges a First Amendment retaliation claim against the Officers for those two discrete actions—bending Plaintiff's arm and kicking him in the face—as it appears that neither would have occurred but for a retaliatory motive.

However, Plaintiff has not stated a retaliation claim based on the use of force necessary to subdue him after he attacked Defendant Mathewson. Plaintiff admits that he punched Mathewson in the face and tackled him to the ground after Mathewson bent his wrist. Even if some impermissible reason had entered into the Officers' decision to use force to subdue Plaintiff—a finding not made by this Court—it would have still been necessary for the officers to restore order. Thus, any causal connection between Plaintiff's

grievances and lawsuits and the defendants' use of force after Plaintiff attacked Mathewson is broken because the adverse action suffered by Plaintiff was a direct result of his own actions. *See Nieves v. Bartlett*, 587 U.S. 391, 398 (2019); *Smith v. Mosley*, 532 F.3d 1270, 1279 (11th Cir. 2008) (finding that if a prisoner would have been subject to the same discipline in the absence of protected speech, the retaliation claim will fail). Accordingly, Plaintiff has satisfied neither the second nor third elements of a retaliation claim for either officer's conduct in subduing Plaintiff after he attacked Mathewson.

### B.  Excessive Force

The core inquiry in an Eighth Amendment excessive force claim is whether force was applied in a "good faith effort to maintain or restore discipline" or "maliciously or sadistically" to cause harm. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). The following must be considered to answer that question: (1) the need for force; (2) the relationship between that need and the amount of force used; (3) the extent of the plaintiff's injury; (4) "the threat to the safety of staff and inmates"; and (5) "any efforts made to temper the severity" of the force. *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007).

Again, Plaintiff alleges that Mathewson painfully twisted or bent his arm for no reason and kicked him in the face after he was subdued. Even these sparse facts may state an Eighth Amendment claim for excessive force against Mathewson at this stage of litigation. A closer call is whether Plaintiff has

stated a constitutional claim based on the force used by Mathewson and Morales-Roman to subdue him after he attacked Mathewson. There was clearly a need for the use of some force—and Plaintiff received a disciplinary report for his role in the altercation—but further factual development is required to determine whether the Officers "maliciously and sadistically engaged in force disproportionate to [their] need" to maintain order. *Sconiers v. Lockhart*, 946 F.3d 1256, 1268 (11th Cir. 2020).

Thus, whether good cause existed for the amount of force used to subdue Plaintiff after he attacked Mathewson and the extent of any resulting injuries present questions of fact that may be answered in a motion for summary judgment or at trial, but not at this stage of litigation where the Court is limited to the pleadings. *See St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).[5]

---

[5] The Officers also argue that they are entitled to qualified immunity on these claims. In the Eleventh Circuit, qualified immunity is generally unavailable in cases alleging Eighth Amendment excessive force because the use of force maliciously and sadistically to cause harm is clearly established as a constitutional violation. *See Skrtich v. Thornton*, 280 F.3d 1295, 1303-04 (11th Cir. 2002). What is more, it is well-settled that using significant force against an inmate for no reason is unconstitutional, even if no serious injury results. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). Given the inherently factual and subjective nature of the inquiry, the Court cannot conclude that the Officers are entitled to qualified immunity at this stage, but they may re-raise a qualified immunity argument on summary judgment if this case proceeds.

## IV.   Conclusion

In sum, Plaintiff's First Amendment claims based upon the Officers' use of force to subdue him after he attacked Mathewson are dismissed for failing to state a claim on which relief may be granted. However, further factual development is necessary to determine the viability of Plaintiff's remaining First and Eighth Amendment claims, and those claims are not dismissed.

The Court defers ruling on the Officers' exhaustion arguments and on Plaintiff's claims against Defendant Scarpati.

Accordingly, it is **ORDERED**:

1.      The Court **DEFERS** ruling on the exhaustion arguments raised by Officers Scarpati, Mathewson, and Morales-Roman and on any claim against Defendant Scarpati until after Plaintiff files his response to the Officers' supplemental motion to dismiss.

2.      As to Plaintiff First and Eighth Amendment claims, the Officers' motion to dismiss (Doc. 57) is **GRANTED in part** and **DENIED in part**.

   a. The motion is **GRANTED** as to Plaintiff's First Amendment retaliation claims based on the Officers use of force after Plaintiff attacked Officer Mathewson.

   b. The motion is otherwise **DENIED**.

3.      Plaintiff's motion for an extension of time (Doc. 82) is **GRANTED**.

Plaintiff shall respond to the Officers' supplemental motion to dismiss (Doc.

81) by April 15, 2026.

**ORDERED** in Fort Myers, Florida on March 17, 2026.

Kyle C. Dudek
United States District Judge