UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LARRY BERNARD MERRITT,

Plaintiff,

v. Case No. 2:24-cv-397-KCD-NPM

STEPHEN MATHEWSON, MATTHEW MORALES-ROMAN, ALBERT SCARPATI, E. DELNE, M. BURTON, L. PARASCRUK, G. NOE, MEDICAL PROVIDERS CENTURION CORPS, and FLORIDA CONTRACTOR,

Defendants.
_______________________________/

**ORDER**

Plaintiff Larry Bernard Merritt, a prisoner of the Florida Department of Corrections (FDOC), initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983. (Doc. 1.) He generally alleges that two officers at Charlotte Correctional Institution attacked him in retaliation for his grievances and complaints. (*Id.*) Now pending is a supplemental motion to dismiss for lack of exhaustion filed by Defendants Major Scarpati, Officer Mathewson, and Officer Morales-Roman. (Doc. 81.)

The Court grants Defendants' supplemental motion in part. As explained below, Defendant Scarpati is dismissed from this action under 42 U.S.C. §

1997e(a) because Merritt did not exhaust his administrative remedies on any claim against him before filing this complaint. However, the defense did not meet its burden of showing that Merritt did not exhaust his administrative remedies on the remaining claims against Defendants Mathewson and Morales-Roman, and these Defendants are directed to answer the complaint within twenty-one days.

## I. Pleadings and Procedural History

### A. Complaint

Merritt alleges the following relevant facts:[1] On October 14, 2021, Officers Mathewson and Morales-Roman escorted Merritt to his cell. (Doc. 1 at 10, ¶ 1.) Morales-Roman allegedly told him that he did not like sex offenders. (*Id.* at 10, 18 ¶¶ 2–5.) Mathewson also expressed his personal dislike of Merritt, and while Merritt responded that he did not want "any problems," Mathewson continued to "threaten" and "provoke" him. (*Id.* at 18, ¶¶ 5–7.)

At the cell door, Moralas-Roman told Merritt, "Since you like to write grievances and filed complaints to the court, you're going to get something to write about, Rapist." (*Id.* ¶ 8.) As Mathewson removed Merritt's cuffs, he put pressure on his fingers, which caused severe pain. (*Id.* at 18–19, ¶ 9.)

[1] This is a subset of the underlying facts because the instant motion concerns only the Officers. When quoting Plaintiff, the Court will correct minor spelling and grammar errors.

Mathewson allegedly told Merritt that he was going to break his hand. Merritt tried, but was unable, to pull his hand away. (*Id.* at 19, ¶ 9.) He then punched Mathewson on the side of the face. (*Id.* ¶ 10.)

Mathewson responded by grabbing Merritt and pulling him close. (Doc. 1 at 19, ¶ 11.) Merritt grabbed Mathewson around the waist, and they fell to the floor with Merritt on top. (*Id.* ¶ 12.) Mathewson grabbed Merritt as he tried to get up. (*Id.* ¶ 13.) Morales-Roman, meanwhile, began to punch Merritt in the neck and side of the face, preventing him from rising. (*Id.*) Morales-Roman struck Merritt on the back of the head until a gash opened, and Merritt lost consciousness. (*Id.* ¶ 14.) Morales-Roman did not stop hitting Merritt until other inmates said that he was "going to kill him." (*Id.* ¶¶ 14, 15.)

Morales-Roman helped Mathewson stand up. (*Id.* ¶ 16.) Mathewson re-cuffed Merritt's hands and told him that "[t]his is for Cotte and Sharres and as long as you're here at Charlotte C.I. you'll keeping getting your ass kicked and if you leave and ever come back, it will start all over again." (*Id.* at 19–20, ¶ 17.) Mathewson then kicked Merritt in the side of his face near his right eye. (*Id.* at 20, ¶ 18.)

Merritt was transferred from Charlotte Correctional Institution to Florida State Prison on October 15, 2021, the day after the use-of-force incident. There, he was examined by a nurse who noted that Merritt had swelling and bruising on his head, a swollen left hand, pain when opening or

closing his mouth, and swelling and pain in his back and ribs. (Doc. 1-1 at 19.) Merritt suffers from recurring headaches, especially in the area where he was hit. (Doc. 1 at 22, ¶¶ 34–35.)

Merritt alleges that prior to this incident, he told Scarpati that he was afraid of Mathewson and Morales-Roman by writing grievances—some of which were approved. (Doc. 1 at 17, 21.)

Merritt alleges that Mathewson and Morales-Roman violated the Eighth Amendment by using excessive force against him without a legitimate penological reason. (Doc. 1 at 22.) He also claims that they violated the First Amendment by retaliating against him for filing complaints to the court and for being a sex offender. (*Id.*) As for Scarpati, he was allegedly deliberately indifferent and violated the Eighth Amendment by failing to protect him from Mathewson and Morales-Roman. (*Id.* at 21.)[2]

### B. The Officers' Motions to Dismiss

On June 13, 2025, the Officers moved to dismiss Merritt's complaint on eight separate grounds. (Doc. 57.) Upon review, the Court granted their motion on the First Amendment retaliation claims that were based on Mathewson's and Morales-Roman's use of force after Merritt attacked Mathewson. (Doc. 86.)

---

[2] Merritt also raised deliberate indifference claims against several medical defendants. The Court granted the medical defendants' motion to dismiss, and they have been dismissed from this action. (Doc. 84.)

The Court deferred disposition on the Officers' exhaustion arguments and on all claims against Scarpati. (*Id.*)[3] Otherwise, the motion was denied.

Thereafter, the Court ordered supplemental briefing on Defendants' arguments that Merritt's claims were unexhausted. The Court explained that—while they argued that Merritt had not exhausted his administrative remedies under 42 U.S.C. § 1917e(a) and attached 41 pages of exhibits in support—Defendants did not explain how the exhibits negated exhaustion. (Doc. 75 at 2.) The Court noted that, "it would be a waste of time and resources to litigate issues that are barred under section 1917e(a). Thus, the Officers must file a supplement to their motion to dismiss that discusses each of Merritt's related grievances and explains whether that specific grievance exhausted any of the claims raised against each of them." (*Id.* at 3.) The Court directed Merritt to respond to any supplemental motion filed by the Officers, but cautioned him as follows:

> Plaintiff must not repeat his substantive allegations, and he must not address any other reasons for dismissal argued by Defendants in their original motions to dismiss. His response must be limited solely to the issue of exhaustion. If Plaintiff repeats his factual allegations, adds additional claims or factual allegations, or attempts to amend his original complaint in any other manner, the Court will not consider his response when reviewing Defendants' supplemental papers.

---

[3] The Court deferred ruling on claims against Scarpati because it did not appear that Merritt had exhausted any claim against him.

(Doc. 75 at 3–4.) Despite the Court's admonitions, Merritt submitted an untimely response that repeated (and expanded upon) his substantive allegations, raised additional grounds for relief, and argued (in depth) his entitlement to punitive damages. (Doc. 88.) The Officers move to strike the pleading. (Doc. 90.) The Court will not consider Merritt's untimely response for two reasons.

First, the response spends considerable time repeating and augmenting Merritt's substantive allegations as well as offering additional theories of relief. However, Merritt was specifically told not to repeat his factual allegations or add new claims to his response and warned that the Court would not consider it if he did so. Next, the response was a month late, and it is well-established principle that "[d]eadlines are not meant to be aspirational." *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 864 (11th Cir. 2004). Nevertheless, Merritt wrote a letter to the Clerk explaining that he believed an earlier response (Doc. 85) to the Medical Providers' supplemental motion adequately addressed the Officers' supplemental motion. (Doc. 88-1.) Because the Court prefers to resolve issues on the merits rather than on a procedural point—it will consider Merritt's earlier response to the motion.

## II. Legal Standards

The Prison Litigation Reform Act (PLRA), which applies here, has an exhaustion requirement:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is designed to "[afford] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).

The Supreme Court has explained that exhaustion must be "proper." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. In other words, an institution's requirements define proper exhaustion. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Thus, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008). Further, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. *Johnson v. Meadows*, 418 F.3d 1152, 1157-59 (11th Cir. 2005).

The Eleventh Circuit directs district courts to consider failure to exhaust in a motion to dismiss instead of a motion for summary judgment. *Bryant*, 530 F.3d at 1374-75. When (as here) the defendant alleges that a prisoner has not exhausted his administrative remedies, courts are permitted to hear evidence outside of the record. *Id.* at 1377 n.16. Accordingly, the parties may submit documentary evidence concerning the exhaustion issue, and doing so will not require the conversion of the motion to dismiss into one for summary judgment. *Id.* In addition, the district court may resolve factual questions concerning a plaintiff's alleged failure to exhaust if the factual disputes do not decide the merits and the parties had sufficient opportunity to develop a record. *Id.* at 1376.

To determine whether a complaint should be dismissed for failure to exhaust administrative remedies, the court first considers the factual allegations in the defendant's motion and those in the plaintiff's response. If they conflict, the court accepts, for purposes of the motion, the plaintiff's version of the facts. *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be stricken. *Id.* If the court determines that the complaint is not subject to dismissal at step one, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* "Once the court makes

findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

## III. Discussion

The following claims remain in this action: (1) First Amendment retaliation and Eighth Amendment excessive force claims against Mathewson based upon his bending of Merritt's fingers or arm and kicking him in the face after he was subdued; (2) an Eighth Amendment excessive force claim against Morales-Roman based upon the amount of force used to subdue Merritt after he attacked Mathewson; and (3) a failure to protect claim against Scarpati for failing to prevent Mathewson and Morales-Roman from harming Merritt.

The FDOC has a three-step procedure for inmate grievances, found at Chapter 33 of the Florida Administrative Code (FAC). Generally, an inmate must: (1) file an informal grievance with a designated prison staff member within twenty days of the incident; (2) file a formal grievance at the institutional level with the Warden; and (3) submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code §§ 33-103.002(12), 33-103.005 – 33.103.011.

The Officers supplied the institutional-level (informal and formal) grievances and appeals filed by Merritt after the incident. Upon review, the Court finds the following grievances directly or tangentially related to the

October 14, 2021 incident:

> October 28, 2021. An informal grievance (#205-2111-0025) seeking log numbers for grievances allegedly filed on October 22, 2021, and October 25, 2021. Merritt was advised that the office had not received any grievances from him on those dates. (Doc. 81-1 at 1; Doc. 81-3.)
>
> November 1, 2021. An informal grievance (#205-2111-0133) complaining that after the October 14, 2021 incident, Merritt was moved without having an opportunity to pack his personal property. (Doc. 81-1 at 1; Doc. 81-5.)
>
> November 1, 2024. A formal grievance (#2111-205-027) seeking Merritt's confidential health records. (Doc. 81-2 at 1.)
>
> November 4, 2021. A formal grievance (#2111-205-057) alleging that "the [disciplinary report] was not processed properly, and the findings of guilt were based on falsified facts[.]"[4] Merritt argued that he was not allowed to show that Mathewson and Morales-Roman used physical force against him in retaliation for filing grievances. He asked that "this disciplinary report be overturned based on the facts that I have provided, that this D.R. be expunged from my file. I seek also to be returned to my CM3 status." (Doc. 81-6 at 2, 3.)
>
> April 8, 2022. A "grievance of reprisal" (#22-6-10798) filed directly with the FDOC. Merritt asserted that he had filed institutional grievances on October 22, 2021, October 25, 2021, November 1, 2021, and November 7, 2021, but had received no responses. He asserted that he was retaliated against by Mathewson and Morales-Roman for filing grievances. He also claimed that the officers used unnecessary force against him. The grievance was denied because its subject had already been referred to the Office of the Inspector General. (Doc. 57-2 at 30–32.)

[4] Plaintiff received a disciplinary report for aggravated battery on corrections officers based upon the October 14, 2021 incident. (Doc. 81-6.) The review team found him guilty and imposed 60 days loss of gain time and 60 days disciplinary confinement. (*Id.*) Plaintiff was given fifteen days to appeal the team's decision. (*Id.*)

**A. Merritt has not exhausted any failure to protect claims.**

Merritt does not allege that Scarpati personally participated in the incident that resulted in his injuries. Instead, he seeks to hold Scarpati liable because he allegedly knew that Merritt was afraid of Mathewson and Morales-Roman yet did nothing to protect him.

None of the grievances offered by the Officers would have alerted prison authorities that Merritt told Scarpati about his fear of retaliation. In his April 8, 2022 grievance of reprisal (#22-6-10798), Merritt describes the use of force by the Officers, but he did not suggest that Scarpati knew that the Officers' retaliation was likely or seek to raise a claim for failure to protect.

A prisoner must exhaust every claim that he seeks to present in court. *See Jones*, 549 U.S. at 219–20 ("All agree that no unexhausted claim may be considered."); *Arias v. Perez*, 758 F. App'x 878, 882 (11th Cir. 2019) ("It would subvert the PLRA's purpose of granting prison authorities time and opportunity to address complaints internally before allowing the initiation of a federal case, if a prison could grant all the relief a prisoner asked for and yet still find itself subject to suit."). Although excessive force and failure-to-protect claims both arise under the Eighth Amendment, the claims are distinct because different legal standards apply. The former rests on the active unnecessary use of force, while the latter stems from a passive failure to intervene. An excessive force claim requires a malicious or sadistic state of

mind while failure to protect requires deliberate indifference. *Compare Hudson v. McMillian*, 503 U.S. 1, 6 (1992) ("[A]pplication of the deliberate indifference standard is inappropriate when authorities use force to put down a prison disturbance."); with *Farmer*, 511 U.S. at 835 (noting that *Hudson*'s "standard of purposeful or knowing conduct is not . . . necessary to satisfy the mens rea requirement of deliberate indifference[.]").

Thus, Merritt was required to file a grievance alerting prison officials of his claim that Scarpati was deliberately indifferent to his fear of retaliation. However, he did not do so, and a grievance describing only acts of retaliation, excessive force, and poor medical care did not suffice. Other district courts addressing multiple claims from prisoners have uniformly concluded that a grievance alleging excessive force does not exhaust distinct failure-to-protect or retaliation claims. *See*, *e.g.*, *Williams v. Woodson*, No. 5:15-CV-372-LJA-MSH, 2016 WL 4539660, at *2 (M.D. Ga. Aug. 30, 2016); *Manning v. Reed*, No. 2:19CV00147-BSM-JTK, 2020 WL 6221159, at *4 (E.D. Ark. Sep. 29, 2020) (noting that "where an inmate alleged excessive force in his grievances but did not allege that any of the prison officials failed to protect him from that force," the plaintiff deprived prison officials "of the opportunity to investigate and resolve a failure to protect claim prior to the filing of a lawsuit in federal court"). Merritt's failure to protect claims against Scarpati are thus dismissed under 42 U.S.C. § 1997e(a).

### B. The Officers have not shown that Merritt failed to exhaust his retaliation and excessive force claims.

The Officers argue that Merritt did not exhaust his excessive force or retaliation claims. (Doc. 81 at 11–13.) However, in his April 8, 2022 grievance of reprisal (#22-6-10798), filed directly with the FDOC Secretary, Merritt complained that the Officers used excessive force against him in retaliation for his prior grievances. Specifically, Merritt alleged:

> [Officers Mathewson and Morales-Roman] were escorting me back to my cell and Officer Mathewson stated "I'm going to give you a one for one for writing me up." I told Officer Mathewson, "I'm not going to fight you but if you put your hands on me then I will protect myself." At my cell door A3205 Officer Mathewson took the leg irons off, then the waist restraints and as he began to take off the handcuffs, he released my left hand first and as he was taking off the right cuff he bent my wrist with the cuff causing me severe pain, and I defended myself by punching Officer Mathewson to stop him from hurting me further.
>
> Officer Mathewson snatched the cuff off and tried to hit me, but I moved, and he grabbed me by the shirts and pulled me to him and I wrapped my arms around his waist, and he pulled me to the floor on top of him. While on the floor Officer Morales began to punch me in the back of the head with his handcuffs until he bust my head open. Then Officer Mathewson punched me in the face a few times.

(Doc. 57-2 at 32.) He further alleged that "the officers retaliated on me for filing grievances on them and used unnecessary force on me to cause me harm[.]" (*Id.*) The Secretary responded to the grievance as follows:

> Your appeal has been reviewed and evaluated. The subject of your grievance was previously referred to the Office of the Inspector General. It is the responsibility of that office to determine the

> amount and type of inquiry that will be conducted. This inquiry/review may or may not include a personal interview wit you. Upon completion of this review, information will be provided to appropriate administrators for final determination and handling. As this process was initiated prior to the receipt of your appeal, your request for action by this office is denied.

(Doc. 57-2 at 30.) The Officers admit (without explanation) that Merritt was "permitted to bypass the informal grievance process and proceed directly to formal grievance," but note that his "grievance appeal requested [only] preservation of video and audio tapes." (*Id.* at 14.) While the Court does not independently find that the grievance was properly (or timely) filed as a grievance of reprisal, the Secretary did not return the grievance to Merritt on procedural grounds. And "district courts may not enforce a prison's procedural rule to find a lack of exhaustion after the prison itself declined to enforce the rule." *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1215 (11th Cir. 2015).

Even though the Officers concede that #22-6-10798 was properly filed as a grievance of reprisal, they argue that it did not exhaust Merritt's claims, presumably because he sought only the preservation of video and audio recordings. But the purpose of the exhaustion requirement is to put prison officials on notice of a problem and give them "time and opportunity to address complaints internally before allowing the initiation of a federal case." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322 (11th Cir. 2007). And because the retaliation

and excessive force claims raised in this lawsuit are "the exact same issue[s]" as previously grieved by Merritt, his complaint constitutes "the continuation of a problem already raised in an earlier grievance." *Parzyck v. Prison Health Services, Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010). In short, #22-6-10798 notified prison officials of Merritt's retaliation and excessive force allegations, serving the purpose of exhaustion.

The Officers have not met their burden of proving that Merritt failed to exhaust his available administrative remedies. *Turner*, 541 F.3d at 1082 ("The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies."). Their supplemental motion to dismiss Merritt's excessive force and retaliation claims as unexhausted is, therefore, denied.

## IV. Conclusion

Accordingly, it is now **ORDERED**:

1. The Officers' motion to strike Merritt's response to the supplemental motion to dismiss (Doc. 90) is **GRANTED** to the extent explained in this order.

2. The Officers' supplemental motion to dismiss (Doc. 81) is **GRANTED in part and DENIED in part.**

   a. All claims against Defendant Scarpati are **DISMISSED without prejudice** for failure to exhaust administrative

remedies. 42 U.S.C. § 1997e(a).

b. The supplemental motion to dismiss is otherwise denied.

3. Defendants Mathewson and Morales-Roman shall file an answer to Merritt's complaint within **TWENTY-ONE (21) DAYS**.

**ENTERED** in Fort Myers, Florida on September 15, 2026.

Kyle C. Dudek
United States District Judge